UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Pamela C. Whitley, as Personal
Representative of the Estate of Scott
L. Whitley, III, on behalf of the
Estate, and Scott L. Whitley, Jr. and
Margaret M. Whitley, survivors,

      Plaintiff,

v.

Billy Woods, in his official capacity as
Sheriff of Marion County, Florida,
Captain Robert Andrew Walters,
Sergeant Ashleigh Snodgrass,
Corporal Arnault Canelle, Corporal
Jordon Ortega, Deputy Carl Holmer,
Deputy Christopher Kristensen,
Deputy Xavier McMiller, Deputy
Demontra Smith, Deputy Sa'Quan
Wyman,

      Defendants.

Case No. _____

**<u>DEMAND FOR JURY TRIAL</u>**

**<u>COMPLAINT FOR DAMAGES</u>**

Plaintiff Pamela C. Whitley, as Personal Representative of the Estate of Scott "Scotty" L. Whitley, III, on behalf of the Estate and Mr. Whitley's parents and survivors, Scott L. Whitley, Jr. and Margaret M. Whitley, files this Complaint for Damages against Billy Woods, in his official capacity as Sheriff of Marion County, Florida, and Captain Robert Andrew Walters, Sergeant Ashleigh Snodgrass, Arnault Canelle, Jordon Ortega, Carl Holmer, Christopher Kirstensen, Xavier McMiller, Demontra Smith, Sa'Quan Wyman, each in their individual capacities. In support, Plaintiff alleges:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

2.     Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of civil rights under the Fourteenth Amendment to the U.S. Constitution.

3.     Plaintiff's Complaint is also predicated upon the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131 and 12133, and § 504 of the Rehabilitation Act.

4.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to consider the state law claims alleged herein.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b), being the district where the claims arose and where Defendants conduct business.

6.     All conditions precedent to this lawsuit have occurred, been performed, or been waived. Specifically, Plaintiff has complied with all applicable presuit notice provisions of section 768.28, Florida Statutes, for its claims under the Florida Wrongful Death Act (FWDA). Defendants have failed to fully comply with the presuit requirements of section 768.28(6)(b).

## PARTIES

7.     Plaintiff Pamela C. Whitley is the duly appointed personal representative of the Estate of Scott L. Whitley, III, having been so appointed by the probate division of the Fifth Judicial Circuit in and for Marion County, Florida.

8.     At all times relevant, Plaintiff Pamela C. Whitley is and was a resident of Marion County, Florida.

9.     Plaintiff—as personal representative of the Estate of Scott L. Whitley, III—is entitled and empowered under the FWDA and otherwise to recover for Scott L. Whitley's survivors, beneficiaries, and estate, all damages allowed pursuant to the FWDA's provisions and otherwise at law for the federal claims.

10.     Plaintiff brings this action on behalf of the Estate and on behalf of Scotty's survivors, Scott L. Whitley, Jr. and Margaret M. Whitley.

3

11.     At all times relevant, Scott L. Whitley, Jr., Scotty's father, is a survivor of the Estate, as defined in section 768.18, Florida Statutes.

12.     At all times relevant, Margaret M. Whitley, Scotty's mother, is a survivor of the Estate, as defined in section 768.18, Florida Statutes.

13.     At all times relevant, Scotty was a pretrial detainee confined in the Marion County Jail, a jail owned and operated by the Marion County Sherriff's Office (MCSO) in Marion County, Florida.

14.     At all times relevant, Scotty was a pretrial detainee subject to the custody and control of MCSO, including by and through its employees and agents.

15.     At all times relevant, Defendant Sheriff Billy Woods was and is the elected Sheriff of Marion County, Florida. As the constitutional officer elected in accordance with Chapter 30, Florida Statutes, and Article VIII, section 1, of the Florida Constitution, Defendant Woods is tasked with implementing, ratifying, and approving the policies and practices of the MCSO. Defendant Woods and/or his subordinates were at all times material the final policymakers for MCSO with respect to the Marion County Jail, and at all times material were acting under color of state law.

16.     Defendant Sheriff Woods is sued in his official capacity and is subject to suit for negligence and wrongful death pursuant to section 768.28, Florida Statutes, as well as claims under section 1983.

4

17.     At all times relevant, Defendant Robert Andrew Walters was and is a captain with MSCO, and is otherwise *sui juris*. Walters is being sued in his individual capacity.

18.     At all relevant times during the events at issue in this case, Walters was acting under color of law.

19.     At all times relevant, Defendant Ashleigh Snodgrass was and is a sergeant with MSCO, and is otherwise *sui juris*. Snodgrass is being sued in her individual capacity.

20.     At all relevant times during the events at issue in this case, Snodgrass was acting under color of law.

21.     At all times relevant, Defendant Arnault Canelle was and is a corporal with MSCO, and is otherwise *sui juris*. Cannelle is being sued in his individual capacity.

22.     At all relevant times during the events at issue in this case, Cannelle was acting under color of law.

23.     At all times relevant, Defendant Jordon Ortega was and is a corporal with MSCO, and is otherwise *sui juris*. Ortega is being sued in his individual capacity.

24.     At all relevant times during the events at issue in this case, Ortega was acting under color of law.

25.     At all times relevant, Defendant Carl Holmer was and is a deputy with MSCO, and is otherwise *sui juris*. Holmer is being sued in his individual capacity.

26.     At all relevant times during the events at issue in this case, Holmer was acting under color of law.

27.     At all times relevant, Defendant Christopher Kristensen was and is a deputy with MSCO, and is otherwise *sui juris*. Kristensen is being sued in his individual capacity.

28.     At all relevant times during the events at issue in this case, Kristensen was acting under color of law.

29.     At all times relevant, Defendant Xavier McMiller was and is a deputy with MSCO, and is otherwise *sui juris*. McMiller is being sued in his individual capacity.

30.     At all relevant times during the events at issue in this case, McMiller was acting under color of law.

31.     At all times relevant, Defendant Demontra Smith was and is a deputy with MSCO, and is otherwise *sui juris*. Smith is being sued in his individual capacity.

32.     At all relevant times during the events at issue in this case, Smith was acting under color of law.

33.    At all times relevant, Defendant Sa'Quan Wyman was and is a deputy with MSCO, and is otherwise *sui juris*. Wyman is being sued in his individual capacity.

34.    At all relevant times during the events at issue in this case, Wyman was acting under color of law.

35.    All conditions precedent to the filing of this action have occurred, accrued, or have been waived.

36.    Specifically, Plaintiff has timely complied with all applicable presuit notice provisions of section 768.28, Florida Statutes. Defendants have failed to fully comply with the presuit requirements of section 768.28(6), Florida Statutes.

37.    Plaintiff Pamela C. Whitley has been required to engage the services of the undersigned counsel and is entitled to an award of reasonable attorney's fees and costs.

## FACTUAL ALLEGATIONS

38.    Scotty had a diagnosed history of schizophrenia.

39.    MCSO deputies were familiar with Scotty and his mental health issues.

40.    For example, on in August 2021, MSCO deputies arrived at Scotty's parent's home because Scotty called MCSO stating that "people were trying to break into his house and kill him." When officers responded, they

were told by Scott Whitley, Jr., Scotty's father, that he was schizophrenic and was not currently taking his medication. According to deputies, "while on scene, subject was actively hallucinating." Scotty was then placed under Baker Act supervision and protection.

41.    In another example, in June 2022, MSCO deputies arrived at Scotty's parents' home again because his parents reported they were struggling with Scotty's mental health issues and that he was not taking his prescribed medication. When an officer arrived on the scene that day, he spoke to a neighbor who stated that Scotty was heard in the garage stating "he would kill." A crisis negotiations team arrived and were able to transport Scotty to the hospital where he was placed under Baker Act protection and supervision.

42.    Scotty was placed under Baker Act protection and supervision by MCSO officers more than a half-dozen times in 2021 and 2022.

43.    On November 16, 2022, MCSO deputies arrived at Scotty's parents' house to serve an injunction for protection against exploitation of a vulnerable adult. Specifically, the officers were at the home because Scotty's elderly parents had sought—as they had on multiple occasions in the past—help from law enforcement because they were concerned about their safety and Scotty's safety.

44.     According to the officers on the scene, Scotty told them that he refused to leave the house and that he would kill them. Those officers claim that Scotty refused lawful orders to submit to hand restraints at which time he was subjected to less-lethal force, specifically fired upon with multiple Taser probes, and chemical agents. Scotty was arrested and charged with resisting arrest and booked at the Marion County Jail, where he remained detained and incarcerated.

45.     While in the custody of MCSO, MCSO established that Scotty suffered from schizophrenia, and MCSO was aware of Scotty's mental health issues and risk of harm and self-harm. He was ultimately placed in administrative confinement as a "Suicide Precaution Inmate" or "S/P" based on his risk of suicide and/or self-harm.

46.     On November 18, 2022—two days after he was detained at the jail—Scotty purportedly attempted to force his way out of a jail cell requiring correctional officers to spray him in the face with chemical agents. He was placed in restraints and the officers planned to charge him with a disciplinary violation.

47.     Several days later, on November 24, 2022, during a strip search, Scotty purportedly attempted to push his way out of his jail cell, resulting in an officer attempting to strike him with a Taser probe. Scotty purportedly evaded the probes by using his gown and ran through the male side of the

infirmary and was struck with a single Taser probe. He was alleged to have continued to disobey orders and was struck again with a Taser probe on his right buttocks. Ultimately, detention deputies claim Scotty complied with orders and was placed in hand and leg restraints.

48.     After this incident, Scotty was held in administrative confinement on "S/P" without any clothes. He was left completely nude in a single cell with an uncovered concrete slab to sit and sleep on.

49.     The next day, at 6:41 a.m., detention deputies went to Scotty's jail cell to conduct a cell inspection. Scotty was alone and naked and covered in welts from previous use of force events.

50.     The floor on his cell was wet. According to Deputy Wyman, the cell floors were usually wet from humidity, but Scotty's cell floor was "wet and slippery."

51.     Upon arriving at the cell, Scotty was sitting naked on the concrete bed area. Detention deputies claimed they ordered Scotty to submit to hand restraints. They claim he did not respond to those commands and the deputies moved on to inspect other cells before returning to Scotty's cell.

52.     At around 6:51 a.m., detention deputies returned to Scotty's cell. Deputy Smith ordered Scotty to submit to hand restraints, which Smith asserted Scotty ignored again. At approximately 6:58 a.m., Scotty approached the door and began to talk to the deputies. At a certain point he was pushed

10

to the wet concrete ground. While Scotty was retreating away from the door, Corporal Ortega gratuitously and without penological purpose administered chemical agents on Scotty, striking him in the face with OC spray for several seconds. Deputy Kristensen also administered OC spray through the door at Scotty, targeting him in the facial area and spraying him without penological purpose and despite Scotty's retreat. Those deputies continued to spray Scotty in the facial area despite him standing at the furthest end of his cell in a compliant manner.

53.   Scotty went to the window for fresh air and stood in that area for several minutes before returning to the concrete bed.

54.   While Scotty was left alone in his cell for several minutes without attention for the exposure to chemical agents, Corporal Ortega then asked Sergeant Snodgrass if the deputies were going to "suit up," meaning enter the cell as an extraction team (or Emergency Response Team) to force Scotty to submit to restraints.

55.   Snodgrass called Captain Walters, who told the deputies to "just go in and grab the inmate."

56.   During this time, Scotty got up from the concrete bed, where he remained naked, bruised, and covered in chemical agents, to sit on the toilet, as ordered by the deputies so that they could enter the cell to restrain him.

57.     Suddenly, however, Ortega and Canelle rushed into the cell, while Scotty sat on the toilet following orders. He placed his arms out in front of his face to shield himself and exclaimed "Wait!"

58.     Within a second, Ortega pushed Scotty off the toilet, and he was taken down to the ground, hitting his upper extremities against the concrete bed area. Ortega's entire body was up against Scotty when he deployed his Taser, striking Scotty in the back. Cannelle also deployed his Taser in drive stun capacity, pressing the weapon into Scotty's lower right back. They continued to deploy their Tasers on Scotty, striking him in the legs and abdomen.

59.     Holmer, McMiller, and Smith also entered the cell while Scotty was on the ground screaming and pleading for help. The officers dragged him away from the bed area continuing to deploy their Tasers and OC spray while he was supine, on the ground begging and pleading for them to stop. He was not striking the officers or resisting them, as he tried to protect himself from the officers' attacks, he continued to scream and plead for help.

60.     While Scotty was on the ground and being repeatedly attacked by the guards, Snodgrass ordered Wyman, who was just outside the cell, to administer chemical agents on Scotty, though he inadvertently administered it on himself.

61.     After several seconds of gratuitously holding Scotty down and deploying their weapons on him, Ortega placed restraints and a spit guard on Scotty.

62.     Ortega, Cannelle, McMiller, Holmer, and Smith dragged Scotty out of his cell, where he lay on his stomach without moving. His chest was not rising, and his face was blue.

63.     CPR was performed. Sergeant Alan Drake retrieved the automated external defibrillator and provided it to nurse Janice Gissendanner who then applied it to Mr. Whitley's body, but the AED advised to continue CPR. Scotty was taken to the hospital where he was pronounced dead.

64.     Scotty suffered from multiple blunt force traumas to the head, neck, torso, and extremities, and deep tissue hemorrhaging. His death was ruled a homicide.

**Count I**
**Wrongful Death**
**(against Sheriff Woods)**

Plaintiff repeats and re-alleges paragraphs 1 through 64 above, as if fully set forth herein and further alleges:

65.     Count I is against Sheriff Billy Woods, in his official capacity as Sheriff of Marion County, Florida, for the negligence of MCSO's employees

and contractors, including Heart of Florida and its employees and contractors, and negligent treatment of Scotty, which resulted in his wrongful death.

66.     This action is brought pursuant to the Florida Wrongful Death Act, sections 768.16-27, Florida Statutes.

67.     Woods authorized his agents and employees to act for MCSO when the negligent acts alleged herein were committed. His agents and employees accepted the undertaking of acting on his behalf when they committed the negligent acts alleged herein. Woods had control over his agents and employees.

68.     The negligent acts of Wood's agents and employees were committed while acting within the scope and course of their employment. Thus, Woods, as Sheriff of Marion County, Florida, is liable for the negligent actions of his agents and employees.

69.     Woods and his agents and employees owed Scotty a nondelegable duty to use reasonable care to ensure his safety.

70.     Woods and his agents and employees failed to perform their duty to use reasonable care to ensure Scotty's safety thereby abandoning their duty to him.

71.    Woods and his agents and employees failed to perform their duty to use reasonable care to ensure Scotty's safety and well-being by, including, without limitation:

a.   failing to maintain and properly monitor the safety and welfare of Scotty;

b.   failing to train MCSO employees regarding their obligation to secure the safety of prisoners and detainees, including without limitation, on crisis intervention training;

c.   failing to implement crisis intervention training;

d.   failing to properly engage in cell extraction practices for mentally ill prisoners and detaines;

e.   failing to train MCSO employees regarding proper use of force; and

f.   failing to prevent Scotty's death.

72.    As a direct and proximate result of Woods' and his employees' and agents' failure to perform their duty to use reasonable care to ensure Scotty's safety and well-being, Scotty died.

73.    It was reasonably foreseeable that harm would befall Scotty either directly or indirectly as a result of these actions and omissions by Woods, his agents, and employees.

## Count II
## 42 U.S.C. § 1983
### (against Sheriff Woods)

Plaintiff repeats and re-alleges paragraphs 1 through 64 above, as if fully set forth herein and further alleges:

74.    As a pretrial detainee at the Marion County Jail had a Fourteenth Amendment right to be protected from harm while incarcerated and awaiting trial.

75.    Woods was deliberately indifferent or purposefully ignoring the serious risks to Scotty's well-being in violation of the Fourteenth Amendment.

76.    Scotty's injuries were proximately caused by the policies and practices of MCSO through Defendant Woods.

77.    There exist policies and widespread practices at the Marion County Jail encouraging the wanton use of force and punishment for non-penological purposes. Those policies also fail to account for mental illness, ensure that mentally ill detainees are provided adequate treatment, and ensure that detention deputies engage in crisis intervention or appropriate protocols regarding cell extraction for prisoners and detainees with mental health issues.

78.     These policies, customs and practices were allowed to flourish because Woods directly encouraged the very type of misconduct at issue here and failed to provide adequate training, supervision, and staffing of correctional employees at the jail.

79.     Woods violated Scotty's rights by maintaining policies, practices and customs that were the moving force of these constitutional violations.

80.     These policies, practices, and customs were able to exist and thrive within MCSO because Woods was deliberately indifferent to the problem, thereby effectively ratifying it.

81.     MCSO also acted to violate Scotty's constitutional rights through the actions and failures to act by individuals with final policymaking authority for it.

82.     Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## Count III
## Violation of 42 U.S.C. § 12131, *et seq.* & 29 U.S.C. §§ 791-94
### (against Sheriff Woods)

Plaintiff repeats and re-alleges paragraphs 1 through 64 above, as if fully set forth herein and further alleges:

83.     This count is brought under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.* and 42 U.S.C. § 12131-12134, as well as Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 701, *et seq.* and 29 U.S.C. §§ 791-94, *et seq.*, and their respective implementing regulations.

84.     MCSO, through its Sheriff, Defendant Woods, is a "public entity" within the meaning of 42 U.S.C. § 12131(1) and 28 C.F.R. § 35.104.

85.     MCSO is a program or activity that receives federal funding and the operations of MCSO comprise a program and services for purposes of ADA and RA. *See* 29 U.S.C. § 794.

86.     Scotty suffered from mental health disorders, including schizophrenia, which is a disorder or condition that rendered him disabled as defined in 42 U.S.C. § 12101(1) & (2).

87.     MSCO recognized that Scotty had a diagnosed impairment that substantially limited one or more major life activity. 42 U.S.C. § 12102(1)(C) & (3); 28 C.F.R. § 35.108(a)(1)(iii) & (f). MSCO subjected Scotty to prohibited action because of an actual or perceived impairment.

88.     Scotty was at all times material a qualified individual with a disability because he met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by MCSO, including but not limited to medical services. 42 U.S.C. § 12131(2); 28 C.F.R.

§ 35.104; 29 U.S.C. § 794(a).

89.     The widespread failure to provide accommodations for individuals like Scotty with mental health disorders was obvious, flagrant, rampant and of a continued duration such that to put Woods and/or his predecessor on notice.

90.     At all times material, Woods was an official who at a minimum has authority to address the discrimination and to institute corrective measures on MCSO's behalf and had actual knowledge of discrimination in the entity's programs and failed to adequately respond.

91.     Specifically, Woods failed to ensure that individuals suffering from known and diagnosed mental health disorders, like Scotty, were provided accommodations to prevent the risk of serious harm.

92.     Additionally, Woods failed to ensure that Scotty was not discriminated against or punished because of his disability. As a result of Scotty acting out on account of his disability, he was attacked by officers and kept naked in a filthy cell with wet, slippery floors. He was denied treatment and instead punished for acting out.

93.     Woods had actual knowledge of the widespread failure of MCSO to provide accommodations to prisoners and detainees like Scotty. Woods and/or his predecessor turned a blind eye to his subordinates who would deny reasonable accommodations to prisoners and detainees, like Scotty, despite a

known and obvious need for such accommodations, such as not providing extended mental health supervision, keeping prisoners and detainees with mental health disorders in confinement or unable to access services instead of accommodating their needs, and punishing prisoners with disciplinary action because of their disability.

94.     Scotty's need for accommodation was known and obvious and upon information and belief.

95.     Woods acted intentionally and/or with deliberate indifference to Scotty's need for a reasonable accommodation by failing to accommodate his serious mental heath disorder, implement accommodations to ensure his safety from others and himself, and failing to train MCSO employees and contractors regarding appropriate management of mentally ill prisoners and detainees.

96.     Woods has known about the violations noted herein but has failed to correct them, thereby exhibiting deliberate indifference to the rights of Scotty.

97.     As a proximate cause of Woods' failure and intentional refusal to provide Scotty with a reasonable accommodation for his disability, he suffered physical harm and severe pain.

98.     Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 12205 and 29 U.S.C. § 794a.

**Count IV**
**Violation of 42 U.S.C. § 1983: Excessive Use of Force**
**(against Ortega, Kristensen, Canelle, Holmer, McMiller & Smith)**

Plaintiff repeats and re-alleges paragraphs 1 through 64 above, as if fully set forth herein and further alleges:

99.     Plaintiff is entitled to relief against Defendants Ortega, Kristensen, Canelle, Holmer, McMiller, and Smith for violation of the Fourteenth Amendment to the U.S. Constitution.

100.    The aforesaid defendants, while acting under color of state law unlawfully and without justification jointly and severally violated the Fourteenth Amendment when they violently attacked Scotty with their less lethal weapons and chemical agents. They violated that right by acting maliciously and sadistically with a sufficiently culpable state of mind to cause harm to Scotty.

101.    Defendants Ortega, Kristensen, Canelle, Holmer, McMiller, and Smith tortured Scotty, who had complied with their orders to sit on the toilet, without any legitimate need to maintain or restore discipline or for any other good faith reason.

21

102.   Despite his compliance, Ortega, Kristensen, Canelle, Holmer, McMiller, at Walters' and Snodgrass's instruction, assaulted and attacked Scotty.

103.   These defendants' respective conduct was motivated by evil intent to harm and torment Scotty by callous or reckless indifference to his right to be free from excessive force.

104.   As a direct and proximate result of the above-described excessive use of force and violence on Scotty, Scotty sustained brutal and severe physical and mental injuries resulting in his untimely death.

105.   Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## Count V
## Violation of 42 U.S.C. § 1983: Supervisor Liability
### (against Walters & Snodgrass)

Plaintiff repeats and re-alleges paragraphs 1 through 64 above, as if fully set forth herein and further alleges:

106.   At all times relevant, Walters and Snodgrass maintained a senior rank and supervisory authority over Ortega, Kristensen, Canelle, Holmer, McMiller, Smith and Wyman.

107.   Walters and Snodgrass, as the ranking officers at the scene, ordered and directed Ortega, Kristensen, Canelle, Holmer, McMiller, Smith and Wyman, their subordinates, to act unlawfully.

108.   Specifically, Walters and Snodgrass ordered Ortega, Kristensen, Canelle, Holmer, McMiller, Smith and Wyman to administer chemical agents, raid Scotty's cell, and attack him despite his compliance in violation of the Fourteenth Amendment and clearly established law.

109.   Ortega, Kristensen, Canelle, Holmer, McMiller, Smith and Wyman followed the unconstitutional directive and attacked Scotty while he was sitting on the toilet complying with orders.

110.   Walters' and Snodgrass' unconstitutional orders were motivated by evil intent to harm and torture Scotty because of his acting out on account of his mental illness or by callous or reckless indifference to his right to be free from excessive force.

111.   As a direct and proximate result of the unlawful orders resulting in excessive use of force and violence on Scotty, Scotty sustained brutal and severe physical and mental injuries resulting in his untimely death.

112.   Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

**Count VI**
**Violation of 42 U.S.C. § 1983: Failure to Intervene**
**(against Kristensen, Cannelle, Holmer, McMiller, Smith & Wyman)**

Plaintiff repeats and re-alleges paragraphs 1 through 64 above, as if fully set forth herein and further alleges:

113.   Plaintiff is entitled to relief against Defendants Kristensen, Canelle, Holmer, McMiller, Smith and Wyman for their failure to intervene to stop Ortega from pushing Scotty to the ground and gratuitously using force against him in violation of the Fourteenth Amendment to the U.S. Constitution. Plaintiff is further entitled to relief against each of these defendants for their then respective failure to intervene to stop each subsequent actor who attacked Scotty.

114.   The aforesaid defendants, while acting under color of state law unlawfully and without justification jointly and severally violated the Fourteenth Amendment when they observed each of the others, while acting under color of state law, commit extreme physical violence on Scotty while he was compliant and pinned to the ground.

115.   As a direct and proximate result of the failure to intervene, Scotty sustained brutal and severe physical and mental injuries resulting in his untimely death.

116.   Plaintiff has been required to engage the services of the undersigned counsel. As such, Plaintiff is entitled to an award of reasonable

24

attorney's fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988.

## **PRAYER FOR RELIEF**

As a result of the tragic and untimely death of Scott L. Whitley, Plaintiff Pamela C. Whitley, as Personal Representative of the Estate of Scott L. Whitley, III, seeks to recover for Scott L. Whitley, Jr. and Margaret M. Whitley, as survivors, and the Estate the following measures of damages:

A. The Estate of Scott L. Whitley has sustained as damages, including medical, funeral, and burial expenses incurred as a result of the death of decedent that have become a charge against his Estate or that were paid on his behalf.

B. Scott L. Whitley, Jr. and Margaret M. Whitley, as survivors, have sustained the following damages:

    i. Loss of past and future support and services, with interest;

    ii. Value of the decedent's past and future support and services;

    iii. Loss of companionship, instruction, and guidance; and

    iv. Mental pain and suffering from the date of injury and continuing for the remainder of their lives.

Accordingly, Plaintiff Pamela C. Whitley respectfully requests that the Court award the aforesaid damages on Counts I through VI; any and all other compensatory, exemplary, and punitive damages suffered by Plaintiff; reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. §§ 12205 and 29 U.S.C. § 794a; and such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Pamela C. Whitley hereby demands a jury trial of all issues capable of being determined by a jury.

Dated: November 27, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
Slater Legal PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

*/s/ Michael E. Levine*
Michael E. Levine (FBN 107363)
Stewart Tilghman Fox Bianchi & Cain, P.A.
One S.E. Third Avenue, Suite 3000
Miami, Florida 33131
mlevine@stfblaw.com
Tel. (305) 358-6644

*Attorneys for Plaintiff*

26